**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

SHIVA STEIN,                                          :
                                                      :
          Plaintiff,                          :   Civil Action No. 1:21-cv-4731
                                                      :
v.                                                    :
                                                      :   **COMPLAINT FOR VIOLATIONS OF**
W.R. GRACE & CO., ROBERT F.                           :   **SECTIONS 14(a) AND 20(a) OF THE**
CUMMINGS, JR., DIANE H. GULYAS,                       :   **SECURITIES EXCHANGE ACT OF**
JULIE FASONE HOLDER, HUDSON LA                        :   **1934**
FORCE, HENRY R. SLACK,                                :
CHRISTOPHER J. STEFFEN, MARK                          :   **JURY TRIAL DEMANDED**
TOMKINS, and SHLOMO YANAI,                            :
                                                      :
          Defendants.                         :
---------------------------------------------------------

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.     This is an action brought by Plaintiff against W.R. Grace & Co. ("Grace or the "Company") and the members Grace board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Grace by affiliates of Standard Industries Holdings Inc. ("Standard Industries").

2.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on May 24, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Gibraltar Merger Sub Inc. ("Merger Sub"), a Delaware corporation and a wholly owned subsidiary of Gibraltar Acquisition Holdings LLC ("Parent"), will merge with and into Grace with Grace surviving the merger and becoming a wholly owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Grace common share issued and outstanding will be converted into the right to receive $70.00 in cash (the "Merger Consideration").

3.     As discussed below, Defendants have asked Grace stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Goldman Sachs & Co. LLC ("Goldman Sachs") and Moelis & Company ("Moelis" and together with Goldman Sachs, the "Financial Advisors") in support of their fairness opinions, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.     It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Grace stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Standard Industries, Parent, and Merger Sub are all headquartered in this District, and Defendants conducts a significant amount of transactions in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Grace common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Robert F. Cummings, Jr. has served as a member of the Board since January 2015.

11.     Individual Defendant Diane H. Gulyas has served as a member of the Board since January 2015.

12.     Individual Defendant Julie Fasone Holder has served as a member of the Board since November 2016.

13.     Individual Defendant Hudson La Force has served as a member of the Board since November 2018 and is the Company's President and Chief Executive Officer.

14.     Individual Defendant Henry R. Slack has served as a member of the Board since May 2019.

15.     Individual Defendant Christopher J. Steffen has served as a member of the Board since November 2006.

16.     Individual Defendant Mark Tomkins has served as a member of the Board since September 2006.

17.     Individual Defendant Shlomo Yanai has served as a member of the Board since May 2018.

18.     Defendant Grace is incorporated in Delaware and maintains its principal offices at 7500 Grace Drive, Colubia, Maryland 21044.  The Company's common stock trades on the New York Stock Exchange under the symbol "GRA."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

21.     Grace, through its subsidiaries, produces and sells specialty chemicals and materials worldwide. It operates through two segments, Grace Catalysts Technologies and Grace Materials Technologies. The Grace Catalysts Technologies segment offers fluid catalytic cracking (FCC) catalysts for the production of transportation fuels, such as gasoline and diesel fuels, and petrochemicals; and FCC additives. This segment also provides hydro processing catalysts used in

process reactors to upgrade heavy oils into lighter products; polyolefin and chemical catalysts used for the production of polypropylene and polyethylene thermoplastic resins; and chemical catalysts, as well as gas-phase polypropylene process technology to manufacture polypropylene products. The Grace Materials Technologies segment offers functional additives and process aids, such as silica gel, colloidal silica, zeolitic adsorbents, precipitated silica, and silica-aluminas; and fine chemical intermediates and regulatory starting materials for use in consumer/pharma, coatings, and chemical process applications. Grace was founded in 1854 and is headquartered in Columbia, Maryland.

22.     On April 26, 2021, Grace and Standard Industries jointly announced that they had entered into the Proposed Transaction:

> COLUMBIA, Md. and NEW YORK, April 26, 2021 (GLOBE NEWSWIRE) -- W. R. Grace & Co. (NYSE: GRA), a leading global specialty chemical company and Standard Industries Holdings Inc., the parent company of Standard Industries, a privately held global industrial company, today announced that they have entered into a definitive agreement under which Standard Industries Holdings will acquire Grace in an all-cash transaction valued at approximately $7.0 billion, including Grace's pending pharma fine chemistry acquisition. Standard Industries' related investment platform 40 North Management LLC ("40 North") is a long-standing shareholder of Grace.
>
> Under the terms of the agreement, Standard Industries Holdings will acquire all of the outstanding shares of Grace common stock for $70.00 per share in cash. The purchase price represents a premium of approximately 59% over Grace's closing stock price of $44.05 on November 6, 2020, the last trading day prior to the announcement of 40 North's initial proposal to acquire the Company on November 9, 2020. The Grace Board of Directors unanimously approved the transaction.
>
> David Millstone and David Winter, Co-CEOs of Standard Industries Holdings, said, "We are thrilled to welcome Grace to the Standard Industries family and look forward to working with its exceptional team to usher in a new era of innovation and growth for Grace, its employees, customers and the communities in which it operates."

"We are confident that our agreement with Standard Industries Holdings is the best path forward for Grace and our shareholders," said Hudson La Force, Grace's President and Chief Executive Officer. "Standard's $7 billion investment in Grace reflects their confidence in the significant growth opportunities we have and enables our shareholders to realize immediate value at a significant cash premium. This announcement is a testament to the strengths of our talented employees, industry-leading technologies, and deep global customer relationships."

The closing of the transaction is subject to customary closing conditions, including approval by Grace shareholders and the receipt of certain regulatory approvals. The transaction is not contingent upon the receipt of financing. Financing commitments have been provided by J.P. Morgan, BNP Paribas, Citi and Deutsche Bank, and investment funds affiliated with Apollo Global Management as capital partner.

40 North, a holder of 14.9% of shares of Grace common stock, has entered into a voting agreement with Grace, pursuant to which it has agreed, among other things, to vote its shares of Grace common stock in favor of the transaction.

Consistent with the terms of the merger agreement, the Company will suspend payment of a dividend going forward.

In light of this announcement, Grace will issue its first quarter 2021 earnings results on May 6, 2021, but will not be hosting an earnings conference call.

The parties expect the transaction to close in the fourth quarter of 2021. Upon completion of the transaction, Grace will become a privately held company and Grace's common stock will no longer be listed on the New York Stock Exchange.

Grace will operate as a standalone company within the portfolio of Standard Industries Holdings, which includes Standard Industries' industry leading businesses GAF, BMI Group, Schiedel, Siplast, SGI and GAF Energy.

**Advisors**

Goldman Sachs & Co. LLC and Moelis & Company LLC are serving as financial advisors and Wachtell, Lipton, Rosen & Katz is serving as legal counsel to Grace.

> Citi and J.P. Morgan are serving as financial advisors and Sullivan
> & Cromwell LLP is serving as legal counsel to Standard Industries
> Holdings.

23.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Grace's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     **The Materially Incomplete and Misleading Proxy Statement**

24.     On May 24, 2021, Grace filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Grace Financial Projections*

25.     The Proxy Statement fails to provide material information concerning financial projections by Grace management and relied upon by the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about

the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Grace management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Adjusted EBIT, but fails to provide line items, especially, net income, used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the

measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Goldman Sachs' Financial Analysis*

30.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the projected terminal values for the Company; (ii) the inputs and assumptions underlying the use of terminal year multiples ranging from 9.5x to 11.5x; (iii) the inputs and assumptions underlying the range of discount rates ranging from 8.0% to 9.0%, (iv) the Company's weighted average cost of capital; (v) the Company's EBITDA; (vi) the inputs and assumptions underlying the range of perpetuity growth rate ranging from 2.0% to 3.9%; (vii) the net debt of the Company as of December 31, 2020; and (viii) the number of fully diluted outstanding shares of Grace.

31.     With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the use of an illustrative range of EV/NTM EBITDA multiples ranging from 9.5x to 11.5x; (ii) the inputs

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

and assumptions underlying the use of discount rate of 10.13% to determine the implied equity values per share of Grace common stock.

32.     With respect to Goldman Sachs' *Selected Transactions Analysis* for the Company, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by Goldman Sachs in the analysis.

33.     With respect to Goldman Sachs' *Premia Analysis*, the Proxy Statement fails to disclose: (i) the acquisitions observed by Goldman Sachs; (ii) the transaction values for the acquisitions; and (iii) the premia represented by the prices per share paid in those transactions.

34.     With respect to Goldman Sachs's *Selected Public Company Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by Goldman Sachs in the analysis.

*Omissions and/or Material Misrepresentations Concerning Moelis' Financial Analysis*

35.     With respect to Moelis' *Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the Company's net operating losses and other tax credits; (ii) the terminal values of the Company; (iii) the inputs and assumptions underlying the range of discount rates ranging from 7.50% to 9.25%, (iv) the Company's weighted average cost of capital; (v) the inputs and assumptions for using a cost of equity range of 8.5% to 12.5%; (vi) the inputs and assumptions underlying the range of terminal multiples of 9.5x to 10.5x; (vii) the net debt of the Company as of December 31, 2020; and (viii) the number of fully diluted outstanding shares of Grace.

36.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting

to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**On Behalf of Plaintiff Against All Defendants for Violations of**
**Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

39.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by the Financial Advisors and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were

11

therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41.   Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

42.   The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

43.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.   The Individual Defendants acted as controlling persons of Grace within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Grace, and participation in and/or awareness of the Company's operations and/or

intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Grace, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Grace, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

47.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: May 26, 2021

**MELWANI & CHAN LLP**

By:  /s *Gloria Kui Melwani*
_____
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*